**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

GARY L. STEVENS,             :

      Plaintiff,           :

vs.                       :       CA 08-0418-KD-C

H & S HOMES, L.L.C., et al.,    :

      Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the removal petition (Doc. 1), plaintiff's motion to remand (Doc. 10), and the defendants' responses to the remand motion (Docs. 20 & 21).[1] Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT** the motion to remand and **REMAND** this case to the Circuit Court of Dallas County, Alabama from whence it came.

---

[1]      Although the undersigned's order of August 12, 2008 states that the motion to remand will be taken under submission on August 27, 2008 and extends to plaintiff the opportunity to file a reply by August 26, 2008 (Doc. 16), it is now determined that the Court need not await plaintiff's reply to rule on the pending motion in light of the defendant's failure to satisfy its burden of establishing by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and costs. Given this disposition, there is no reason for this Court to address the removing defendants' equitable estoppel argument.

## FINDINGS OF FACT

1.      In April of 2007, plaintiff filed a fraud, conversion, negligence and wantonness cause of action in the Circuit Court of Dallas County, Alabama against the removing defendants and Jeff Collins[2] arising out of plaintiff's purchase of a mobile home from an H&S sales lot in Selma, Alabama. (Doc. 1, Exhibit A, COMPLAINT) Throughout the complaint, plaintiff requests  indeterminate damages in excess of the minimum jurisdictional limit of the Circuit Court of Dallas County, Alabama. (*See id.* at 4, 5, 6, 7, 8 & 9) The factual allegations of the complaint read as follows:

3.      Prior to May, 1999, Plaintiff was in the market to purchase a mobile home. During the course of his search, Plaintiff visited Defendants' sales lot in Selma, Alabama.

4.      After viewing a particular mobile home manufactured by Horton Homes, Inc., Plaintiff agreed to purchase the home.

5.      During the meeting with Defendants' H&S authorized agent, servant, or employee, Jeff Collins, oral representations were made to the Plaintiff to induced him to purchase the mobile home and pay the agreed purchase price, $50,387.00.

6.      Based on the written and oral representations made by the Defendants' H&S agents, servants or employees to the Plaintiff, Plaintiff agreed to purchase the subject mobile

---

[2]      As alleged in the complaint, Jeff Collins was a citizen of Alabama and an employee of defendant H&S Homes, L.L.C. (Doc. 1, Exhibit A, at ¶ 2)

2

home from Defendants and signed a contract to that effect.

7.     After the purchase of the mobile home, Plaintiff learned that Defendants made certain material misrepresentations to Plaintiff in order to induce him to purchase the mobile home and pay the agreed price for the unit.

8.     As the direct and proximate result of the Defendants' fraudulent, malicious, intentional and wrongful conduct, Plaintiff has been deprived of his down payment. Further, Plaintiff would not have purchased the mobile home and paid the monthly payments on the home had he known the true facts. Plaintiff has suffered damages in that he lost monies, lost the use of monies, and has suffered mental anguish, anxiety, and emotional distress.

9.     Plaintiff claims that he is entitled to compensatory damages which he has suffered and, in addition thereto, that he should recover punitive damages pursuant to *Alabama Code*, Section 6-11-20. Plaintiff claims that Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to the Plaintiff as defined by *Alabama Code*, Section 6-11-20. Plaintiff further alleges that the Defendants either:

   (a)     Knew or should have known of the unfitness of the agent, employee, or servant which (sic) committed the wrongful conduct and employed him or continued to employ him, or use his services without proper instruction with a disregard of the rights or safety of others; or

   (b)     Authorized the wrongful conduct of its agent, employee, or servant; or

   (c)     Ratified the wrongful conduct of its agent, employee or servant; or

   (d)     The acts of the agent, servant, or employee

were calculated to or did benefit the Defendants.

> 10.    At all times pertinent hereto, Defendants, H&S acted through their duly appointed agents, servants, or employees, which agents, servants or employees acted within the line and scope of their agency, service of employment, or in the alternative, Defendants adopted, confirmed and ratified all the actions and omission[s] of its (sic) agents, servants and employees as its (sic) own.

> 11.    All of the events alleged herein were first discovered within two (2) years prior to the filing of the instant complaint.

(*Id*. at 2-3)

2.    In the notice of removal, filed July 17, 2008, the defendants

contend that removal is proper based on diversity of citizenship. (Doc.1, at 1)

### III.    Amount in Controversy

> 12.    Mr. Stevens seeks relief from the Defendants for alleged fraud and misrepresentations related to his purchase of a manufactured home from an H&S sales lot located in Selma, Alabama. Mr. Stevens also claims that the Defendants converted furnishings and money associated with his purchase of the home, for all of which he requests unspecified compensatory and punitive damages for lost money, mental anguish, anxiety and emotional distress.

> 13.    Mr. Stevens seeks to recover damages from Defendant Horton Homes, based on the allegation that Defendant H&S Homes is "an alter ego or mere instrumentality of Horton Homes, Inc."

> 14.    Although the Complaint does not specify the damages sought by the Plaintiff, it is clear for purposes of

4

removal that the claims in the Complaint exceed the $75,000.00 requirement of 28 U.S.C. § 1332(a). A removing party "must only show that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Bullock v. United Benefit Ins. Co.,* 165 F.Supp.2d 1255, 1258-59 (M.D. Ala. 2001) (DeMent, J.). Also, "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages **must** be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) . . . . Mr. Stevens seeks punitive damages in each of the seven counts of the Complaint. In addition, the same counsel who represent plaintiff have represented other claimants who have asserted nearly identical claims against Horton Homes and/or H&S in arbitration and another state court case that have resulted in awards and/or verdicts exceeding $400,000.00. *See H&S Homes, LLC v. John McDonald,* 978 So.2d 692 (Ala. 2007) ($440,000); *H&S Homes v. Christina McDonald*, 910 So.2d 79 (Ala. 2004) ($500,000). Because it cannot be shown to a legal certainty that Mr. Stevens is incapable of recovering at least $75,000.00 for his claims, which include fraud and misrepresentation, his punitive damages claims alone are sufficient to satisfy the jurisdictional amount required for removal. *See, e.g., Davis v. Franklin Life Ins. Co.*, 71 F.Supp.2d 1197, 1200 (M.D. Ala. 1999) (finding, for example, that a claim for fraud under Alabama law against an insurance company "may very well" result in a punitive damages award that exceeds the jurisdictional amount").

15.   Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441 because (a) the Complaint and available evidence satisfy the required amount in controversy which exceeds $75,000.00 exclusive of interest and costs; and (b) as a result of the dismissal of Defendant Collins, this is a civil action between citizens of different States.

16.   This Notice of Removal is filed within thirty days of the plaintiff's filing of a "Notice of Dismissal" on June 18,

2008. Prior to that date, this case was not removable because the presence of Mr. Collins, as a citizen of Alabama, destroyed diversity. Therefore, this Notice of Removal is timely under 28 U.S.C. § 1146(b).

IV.    § 1446(b) One Year Limitation

17.    Although the one-year limitation on the removal of a diversity case imposed by 28 U.S.C. § 1446(b) has expired, recent decisions by several Federal Circuit and District Courts effect an equitable estoppel under the circumstances presented here, which preclude the application of the one-year limitation on removal.

(*Id.* at 4-6 (internal citations to complaint omitted; footnote omitted))

3.    Plaintiff filed his motion to remand on August 7, 2008. (Doc. 10) Therein, plaintiff contends that the jurisdictional requirement for circuit courts in Alabama is an amount in excess of $10,000 and that though he sought an indeterminate amount in excess of $10,000, including compensatory and punitive damages, the defendants have not carried their burden of proving by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and costs. (*See id.* at 1-2) In addition, plaintiff contends that this cause of action is due to be remanded since the notice of removal was filed more than one year after the filing of the complaint in violation of 28 U.S.C. § 1446(b). (*See id.* at 2)[3]

---

[3]    As indicated above (*see,* n.1, *supra*), this Court need not consider and "pass on" the defendant's equitable estoppel argument.

6

4.     In opposition to the motion to remand, defendant Horton Homes, Inc. reiterates the arguments made in the removal petition regarding the amount in controversy, specifically with respect to amounts awarded to other individuals represented by plaintiff's counsel against one or both of the removing defendants (*compare* Doc. 20, at 2-3 *with* Doc. 1, at 5),[4] and cites to *Kennedy v. Fleetwood Enterprises, Inc.*, 2007 WL 4287374 (M.D. Ala.) in support of the argument that it  has satisfied its "burden of demonstrating the likely value of Mr. Stevens' claims in this case[]"(Doc. 20, at 4). Defendant H&S Homes, L.L.C. adopted Horton Homes' response as its own. (*See* Doc. 21)

## CONCLUSIONS OF LAW

1.      "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).  Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is

---

[4]      Horton Homes, Inc. adds to this list an arbitrator's June 5, 2007 award to a Mr. William Shaner. (Doc. 20, at 3)

between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

    2.    "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002); *see also Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted) ("[T]he removing party bears the burden of demonstrating federal jurisdiction."); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal jurisdiction."). Therefore, in this case, the burden is on the removing defendants to establish complete diversity, that is, the plaintiffs are all diverse from the  defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott, supra*, 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified demand

8

for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement."). More specifically, "the removing defendant[s] must establish the amount in controversy by '[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'" *Lowery, infra*, 483 F.3d at 1209, quoting *Black's Law Dictionary* 1220 (8th ed. 2004).

3.      The removing defendants have failed to establish by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds the $75,000 jurisdictional requirement. This Court's analysis of this issue is necessarily informed by the Eleventh Circuit's recent decision in *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (2007), *cert. denied sub nom. Hanna Steel Corp. v. Lowery*, ___ U.S. ___, 128 S.Ct. 2877, ___ L.Ed.2d ___ (2008).

> [W]e conclude that the removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447(c) requires that a court review the propriety of removal on the basis of the removing documents. If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand.

Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate.

.      .      .

[U]nder § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction. This inquiry is at the heart of a case, such as the one before us, in which the plaintiffs challenge removal by filing a timely motion to remand under § 1447(c). In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed-i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings. The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

.      .      .

Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss.

*Id*. at 1211, 1213-1215 & 1217 (internal citations and footnotes omitted).

    4.    In accordance with *Lowery*, therefore, this Court looks solely to plaintiff's complaint and the notice of removal to assess the propriety of removal. The undersigned quickly discerns that the jurisdictional amount of $75,000 is nowhere clearly stated on the face of the complaint. Moreover, that amount is not clearly deducible from the complaint or the removal petition. The removing defendants appear to make a two-pronged argument with respect to why this Court should find that the jurisdictional amount is readily deducible from the complaint. In the removal petition and in response to the plaintiff's motion to remand, Horton Homes, Inc. cites to several Alabama cases in which plaintiff's attorneys, who represented other claimants against one or both of the removing defendants, have been successful in garnering (arbitration) awards or verdicts in excess of $75,000 (Doc. 1, at ¶ 14; *see also* Doc. 20, at 2-3)[5] and also cites to *Kennedy v. Fleetwood Enterprises, Inc.*,

---

[5]    It is clear that the Eleventh Circuit reiterated in *Holley Equipment Co. v. Credit Alliance Corp.,* 821 F.2d 1531 (1987) that "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages, must be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Id*. at 1535 (internal citations and footnote omitted). However, this proposition of law does not lessen the removing parties' burden to prove that the jurisdictional amount in controversy exceeds $75,000 nor does it otherwise shift any burden to the plaintiff to prove the contrary. Any suggestion, implicit or otherwise, by the removing parties that plaintiff bears a responsibility to establish to a legal certainty that he will be incapable of recovering at least $75,000 for his claims (*see* Doc. 1, at 5 ("Because it cannot be shown to a legal certainty that Mr. Stevens is incapable of recovering at least $75,000.00 for his claims, which include fraud and misrepresentation, his punitive damages claims alone are

2007 WL 4287374 (M.D. Ala.) for the proposition that the foregoing evidence

of awards and verdicts in similar cases satisfies "its burden of demonstrating

the likely value of Mr. Stevens' claims in this case[]" (Doc. 20, at 4). As

*Lowery* makes clear, however, such "'evidence' . . . fails to support the

defendant['s] contention that [this] [] court [has] jurisdiction over this action."

483 F.3d at 1220.

> First, we note that this evidence regarding the value of other tort
> claims was not received from the plaintiffs, but rather was
> gathered from outside sources. As such, the evidence is not of
> the sort contemplated by § 1446(b). Even if the defendants had
> received the evidence of other suits from the plaintiffs, we
> question whether such general evidence is ever of much use in
> establishing the value of claims in any one particular suit.
> Looking only to this evidence and the complaint, the facts
> regarding other cases tell us nothing about the value of the
> claims in this lawsuit. Even were we to look to evidence beyond
> that contained within the notice of removal, in the present
> dispute-with a record bereft of detail-we cannot possibly
> ascertain how similar the current action is to those the
> defendants cite.

*Id.* at 1220-1221 (footnote added). Thus, the Alabama  cases cited by the

removing defendants are due to be rejected, *cf. Siniard v. Ford Motor Co.,* 554

F.Supp.2d 1276, 1277 & 1279 (M.D. Ala. 2008) ("This is a product liability

case arising out of a motor vehicle accident in Alabama on April 5, 2006,

which claimed the life of a Tennessee resident citizen named Deborah S.

---

sufficient to satisfy the jurisdictional amount required for removal.")) is **REJECTED**.

Siniard. . . . Ford acknowledged that the Complaint does not contain a specific damage request, but noted that Plaintiff sought compensatory and punitive damages for the wrongful death of Deborah Siniard. As evidence that the claim in this case necessarily exceeded $75,000, Ford asserted that other Alabama courts have routinely entered wrongful death verdicts in excess of $75,000 in product liability claims. In support of this proposition, Ford listed numerous cases from various courts which resulted in plaintiffs' verdicts in wrongful death cases each of which exceeded $75,000. . . . While this Court agrees that the precepts set forth in *Lowery* require the remand of this case which was removed on nothing more than speculation about the amount in controversy, the Court cannot agree that it has the option of ignoring *Lowery* until after the mandate issues or the Supreme Court addresses that case."); *Carswell v. Sears, Roebuck & Co*., 2007 WL 1697003, *1 (M.D. Ala. 2007) ("Prior to *Lowery*, Alabama personal injury cases and wrongful death cases with diversity of citizenship but no *ad damnum* were routinely removed to federal court and often kept there by the defendant asserting the existence of more than $75,000 in controversy and citing jury awards in excess of that amount in similar Alabama cases. In contrast to the former practice, *Lowery* now requires that the documents before the court on removal 'unambiguously establish federal

13

jurisdiction.' District courts in this circuit are no longer able to 'speculate in an attempt to make up for the notice's failings,' nor are courts able to consider 'evidence regarding the value of other tort claims.'"),[6] as is the *Kennedy* case since that case failed to cite to the controlling language from *Lowery*.[7] The undersigned's rejection of the "evidence" supplied by the removing defendants necessitates a finding by this Court that the removing defendants have failed to establish by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and

---

[6]     The defendants nowhere concede that Stevens is entitled to an award of compensatory or punitive damages and presumably plan to oppose plaintiff's effort to obtain any award in this case. Accordingly, the cases the defendants cite to this Court do not provide the undersigned any useful information about the value of the claims in this lawsuit. All this Court knows is that the purchase price of the subject mobile home was $50,387.00. However, this information is not of much assistance to the Court because it is clear that the purchase price was financed and there has been no accounting of the total amount of payments, including the down payment, made by plaintiff.

[7]     The judge in the *Kennedy* case was Chief Judge Mark Fuller, the same judge who later rejected in *Siniard, supra*, the same type of "evidence" the removing defendants in this case want this Court to accept as establishing that they have carried their burden of proving that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and costs. Moreover, it is impossible for the undersigned to believe that a case seeking compensatory and punitive damages arising out of the alleged purchase of a "worthless" mobile home would lead to an award of damages greater than what could be expected to be awarded in a wrongful-death product liability action. Since *Siniard* rejects, as aforesaid, the type of "evidence" the defendants ask this Court to accept, the undersigned is confident that faced with another mobile home case like *Kennedy*, Chief Judge Mark Fuller, consistent with *Siniard*, would reach the conclusion that this Court reaches in this case.

costs.[8]

## **CONCLUSION**

The removing defendants have not established by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Accordingly, the undersigned **RECOMMENDS** that the motion to remand this case to the Circuit Court of Dallas County, Alabama (Doc. 10) be **GRANTED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 26th day of August, 2008.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[8]    The removing defendants rely solely on *Kennedy*, making no mention of *Siniard*, though plaintiff cites to this case (*see* Doc. 10, at 2), and fail to fully appreciate the scope and impact of *Lowery* with respect to the jurisdictional amount in controversy.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

\_s/WILLIAM E. CASSADY_____
UNITED    STATES    MAGISTRATE    JUDGE